IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATTI S. TOOLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 3:04-cv-274-DGW |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the Petition for Review of the Commissioner's Decision Denying Benefits (entitled "Plaintiff's Brief") filed by the Plaintiff, Patti S. Tooley, on October 18, 2004 (Doc. 16). For the reasons set forth below, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and this matter is **DISMISSED WITH PREJUDICE.**

### BACKGROUND

The Plaintiff, Patti S. Tooley applied for Disability Insurance Benefit on June 14, 2000 alleging an onset date of December 27, 1999. (Tr. 88.) Her claim was denied initially on December 6, 2000 (Tr. 65), and upon review on February 5, 2001 (Tr. 70). The Plaintiff requested a hearing before an Administrative Law Judge and it was held on September 28, 2001. (Tr. 29-60.) After the hearing, Administrative Law Judge Tom D. Capshaw issued an unfavorable decision on December 26, 2001 (Tr. 17-25). The Appeals Council initially denied review on May 16, 2003. (Tr. 11.) On February 27, 2004, the Appeals Council, upon considering additional information, denied review again. (Tr. 4.) The Plaintiff filed her complaint before this Court on April 22, 2004.

On February 5, 1998, the Plaintiff underwent a "Posterior spine fusion from T3 to L3" to

treat her "painful scoliosis." (Tr. 158.) Dr. Gregory McComis, who conducted the operation stated that the Plaintiff had pain at all times that is located in her mid back and that radiates to her chest and right shoulder. (Tr. 157.) The Plaintiff underwent occupational therapy and physical therapy after the surgery, met all of her goals, and was discharged on February 6, 1998 and February 9, 1998, respectively . (Tr. 162-163.) The Plaintiff also had additional physical therapy from September, 1998 to February, 1999. (Tr. 171.) She was again discharged with all of her goals having been met. (Tr. 171.) Each of the physical therapy notes indicated that the Plaintiff was improving and tolerating the exercises required. (Tr. 172-185.) The Plaintiff, by the end of this therapy sessions, reported that she went back to work as a housekeeper for a clothing store (Tr. 104, 172.) At the request of Dr. McComis, the Plaintiff underwent a functional capacity evaluation performed by Ginger Mason, a physical therapist, on September 5, 2000. (Tr. 192.) Ms. Mason reported that the Plaintiff was capable of performing light work. (Tr. 192).

Prior to her surgery, the Plaintiff reported occasional pain in her shoulders that continued through 2000. (Tr. 207.) On July 21, 1998, she reported left shoulder pain. (Tr. 205.) A radiology report on August 8, 2000 revealed a normal examination with no structural abnormalities in her right shoulder. (Tr. 232.) On August 22, 2000, however, she reported right shoulder pain that gave the impression of "scapular strain right shoulder." (Tr. 203-204.) Then, on September 1, 2000, she was diagnosed with left shoulder pain and "impingement syndrome and rotator cuff tendinitis" in the right shoulder. (Tr. 203.)

On October 24, 2000, the Plaintiff was examined by Dr. James L. Schutzenhofer for her back pain and shoulder pain. (Tr. 195.) Dr. Schutzenhofer noted that the Plaintiff was mildly

obese and that

> She "was able to heel walk, toe walk, and squat ½ way. Lumbar flexion to 50 degrees with pain but no tenderness or spasms . . . . She has fine finger movements . . . . Gait is normal. There was no difficulty getting on and off of the examination table. There was no muscle atrophy. There was some mild thoracolumbar scoliosis. . . . She had slight decreased grip on the right at 4.5/5. There was 1+ pain and tenderness upon movement of the right shoulder joint but no structural changes. There was negative straight leg raising bilaterally. There was 1+ pain in the shoulders with movement of the neck but no tenderness of paracerviacal spasms. . . . some pain upon movement of the left knee joint but no effusion.
>
> (Tr. 197.)

Dr. Schutzenhofer diagnosed her with "Chronic mid and low back pain due to a history of significant scoliotic curvature" which was "helped significantly" by surgery. (Tr. 198.) He also indicated that she has shoulder and arm "discomforts" but that she had full range of motion in her right shoulder with some pain. (Tr. 198.) The Plaintiff also reported taking various medications: Relafen, Skelaxin, Flexeril, Nordette, and Vicodin. (Tr. 196.) However, on November 1, 2000, Dr. McComis stated that he recommended that she treat her shoulder pain by taking over-the-counter anti-inflammatories and Flexeril. (Tr. 202.) During this same time period, the Plaintiff reported numbness and tingling in her right hand, but that "[s]he doesn't feel like it bothers her enough that she wants to have anything done with it." (Tr. 201.)

At the hearing, the Plaintiff testified along with a vocational expert, Dr. Richard Beck. The Plaintiff stated that she is married with two children who were 11 and 10 as of September 28, 2001 (Tr. 33.) Her treating physician is Dr. Tom Cooper. (Tr. 36.) She stated that she has a number of side-effects from her medication including sleepiness, dizziness, gastric upset, nausea, vomiting, and diarrhea. (Tr. 36.) With respect to frequency, she stated that "any time I take the

prescribed medication it's pretty much a guarantee that that's going to be the case." (Tr. 36.) She reported limited movement due to her back surgery, burning, pinching, and stiffness, and constant, variable pain that increases during the day from a level of 3 to 7 or 8 (with 10 being the "absolute worse pain"). (Tr. 37-38.) With respect to her right shoulder, the Plaintiff stated that she has constant pain, that is sharp at times, and that is a level 7 amount of pain. (Tr. 38-39.) She also has carpal tunnel syndrome in her right wrist that causes numbness and burning. (Tr. 39.) In addition, the Plaintiff has occasional swelling and intermittent pain in her left knee. (Tr. 40.) The Plaintiff reported that she would feel pain if she stood for more than 20 minutes or sat for more than 1 hour, that she wouldn't be able to bend over, squat without support, walk more than 2 or 3 blocks, lift more than 5 pounds, or climb stairs. (Tr. 40-44.) She also cannot put socks on or tie shoelaces (things that require bending over). (Tr. 44.) She reported no other difficulties with self-care activities, stated that she drives her children to school and herself to doctor's appointments, and that she does about an hour of physical housework. (Tr. 45, 48.) She doesn't feel she is capable of doing her past jobs and that she would miss too much work in the future because of the side effects of her medication. (Tr. 46.) She also reported smoking half a pack to a pack of cigarettes a day. (Tr. 51.)

Dr. Beck testified as a vocational expert. (Tr. 57.) ALJ Capshaw's first hypothetical involved a person with the Plaintiff's age, education and work experience who could lift 25 pounds occasionally, 10 pounds frequently, and 6 pounds constantly, and who could constantly sit, stand, and walk in an 8 hour day. (Tr. 58.) Dr Beck testified that with these assumptions, the Plaintiff could perform past relevant work as a telephone operator or housekeeper. (Tr. 58.) If the hypothetical were changed so that lifting was limited to 10 pounds and sitting for 6 hours out

of an 8 hour day, the Plaintiff could still perform past work as a telephone operator. (Tr. 59.) In addition, Dr. Beck testified that there were 5 to 100,000 of these unskilled entry level jobs. (Tr. 59.) However, if Dr. Beck considered the Plaintiff's testimony, regarding her functional limitations, he indicated that there would be no jobs available due to the Plaintiff's allegations of pain. (Tr. 59.) In addition, Dr. Beck indicated that if the Plaintiff's reactions to her medication were taken into account (i.e. nausea) and she were absent for more than one day per month, then "it would certainly have an affect on a person's reliability." (Tr. 59.)

## DISCUSSION

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive. . . ."); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001); See also White v. Barnhart, 415 F.3d 654, 659 (7th Cir. 2005) (stating that "the reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" (quotation marks and citation omitted). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." Richardson v. Perales, 402 U.S. 389, 401, (1972) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). See also Sims v. Barnhart, 309 F.3d 424, 428 (7th Cir. 2002); Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. Golembiewski, 322

F.3d at 915; <u>Cannon v. Apfel</u>, 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." <u>Lopez ex. rel. Lopez v. Barnhart</u>, 336 F.3d 535, 539 (7th Cir. 2003).

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. 20 C.F.R. §416.920. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 §C.F.R. 416.920(b). If she is, the claimant is not disabled and the evaluation process is over; if she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. §416.920(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. 20 C.F.R. §401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §416.920(e). However, if the claimant shows that her impairment is so severe that she is unable

6

to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. §423(d)(2); 20 C.F.R. §416.920(f).

The Plaintiff's first argument is that ALJ Capshaw improperly discounted her assertions of disabling pain. In considering the Plaintiff's allegations of pain, the Defendant "determine[s] the extent to which [][the Plaintiff's] alleged functional limitations and restrictions due to pain or other symptoms can reasonable be accepted as consistent with the medical signs and laboratory findings and other evidence . . . ." 20 C.F.R. §404.1529(a); see also 20 C.F.R. 416.929(a). Social Security Regulations (SSR) elaborate that an ALJ should consider the entire record in making a credibility assessment of a Plaintiff's assertion of pain. SSR 96.7p(4). An ALJ is also required to provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p(5). In addressing the Plaintiff's assertions of pain, ALJ Capshaw, after reviewing the medical evidence and the Plaintiff's testimony, stated:

> I find the claimant's testimony to be somewhat exaggerated. Although the medical records support the claimant's allegations of back and shoulder pain, they do not support the extreme limitations she alleges. A Functional Capacity Evaluation indicated the claimant to be far less limited than she testified to at the hearing. There is no indication in the treating physician's office visit notes that she is limited to the extent she testified to at the hearing. Also, although the claimant alleged significant side effects from her medications, including dizziness and drowsiness, she continues to drive her children to and from school. Also, in a report [sic] dated June 30, 2000, [and] dated January 12, 2001, the claimant testified that she takes Vicodin and Flexeril only at bedtime. All the

> evidence indicates that, although the claimant does have back and shoulder pain, her pain is less that [sic] it was prior to her surgery. Therefore, I find the claimant's testimony to be less than fully credible.
>
> (Tr. 23.)

The ALJ's treatment of the Plaintiff's allegations of pain and reasoning for the discounting of those allegations is sufficient.

An ALJ's credibility assessments are "entitled to 'special deference.'" Sienkiewicz v. Barnhart, 409 F.3d 798, 803 (7th Cir. 2005) (quoting Scheck v. Barnhart, 357 F.3d 697, 703 (7th Cir. 2004)).  ALJ Capshaw gave the Plaintiff's allegations of pain limited weight because of a Functional Capacity Evaluation (hereinafter "FCE"), conducted on September 5, 2000 (at the request of her treating physician) (Tr. 192), and the lack of medical support from her treating physician for the limitations that she asserted.  The FCE indicated that the Plaintiff was capable of light work.  (Tr. 192.) ) While the Plaintiff argues that the testing period of the FCE and subsequent pain caused by the testing were not accounted for by the ALJ, the Plaintiff points to no evidence that would indicate that the Plaintiff suffered any adverse reaction to the testing or that it caused increased pain.  There is no such indication of this in Dr. Schutzenhofer's examination, performed on October 24, 2000 (Tr. 195-198), and no statement by Dr. McComis, on September 20, 2000 (Tr. 202), that the Plaintiff's pain levels were caused or exacerbated by the testing.  The Plaintiff points to no authority to suggest that the time period of the test, which took less than three hours, was insufficient or otherwise unreliable.

The medical progress notes regarding her shoulder pain and back pain, as ALJ Capshaw pointed out, also do not contain any limitations on what the Plaintiff can or cannot do.  (Tr. 201-208.) While ALJ Capshaw may have fleshed out his reasoning, that the medical evidence did not

8

describe the limitations that the Plaintiff testified too, the ALJ's factual determinations are given deference. See Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005) (stating that "the ALJ need not, however, provide a complete written evaluation of every piece of testimony and evidence" (quotation marks and citation omitted)). In highlighting the medical evidence prior to the above quoted passage, ALJ Capshaw noted that the evidence showed that she had normal motion in her shoulder, that her treating physician did not believe that surgical treatment was needed, and that the Plaintiff did not want treatment for the numbness and tingling in her hand. (Tr. 21-22.) While ALJ Capshaw cannot disregard her pain solely on the lack of "objective medical evidence," SSR 96-7p(4), here, the Plaintiff, after her complaints of shoulder and back pain were made to her treating physician, also was not found to be limited in her ability to do light work. This Court cannot conclude that ALJ Capshaw's reasoning was "patently wrong." See Skarbek v. Barnhart, 390 F.3d 500, 504-505 (7th Cir. 2004).

The Plaintiff also argues that ALJ Capshaw improperly disregarded, or ignored, the medications that the Plaintiff was taking and their effect on her ability to maintain a job. As ALJ Capshaw indicated, the Plaintiff testified that she was taking Relafen, Flexeril, Skelaxin, Lipitor, Vicodin, and Zantac and that these medications make her sleepy, dizzy, nauseous, and cause vomiting and diarrhea. (Tr. 23.) The Plaintiff testified that she would miss work if she didn't take all of these medications and that she would have "the stomach problems" and be sleepy and light headed if she did take the medications. (Tr. 46.) Dr. Beck further testified that if these assertions were taken into account, then it would be doubtful that the Plaintiff would be able to keep a job. In analyzing these assertions, ALJ Capshaw noted that the Plaintiff was able to drive her children to and from school and that she took the medication that made her sleepy, Vicodin

9

and Flexeril, at nighttime.  (Tr. 23.)  Prior to this, ALJ Capshaw stated that the Plaintiff's typical day includes getting up, preparing her children for school, driving them there, doing housework, laundry, resting in between chores, and cooking dinner.  In making his conclusions, ALJ Capshaw relied on the Plaintiff's own statement, in a report dated June 30, 2000, that Flexeril and Vicodin cause sleepiness and that she only takes them at nighttime.  (Tr. 125.)  In addition, the Plaintiff also stated that Relafen upsets her stomach and gives her gas and diarrhea if she doesn't eat a full meal with it.  (Tr. 125.)  On January 12, 2001, the Plaintiff added that her medications, in general, cause stomach upset, cramping, and diarrhea, and that Skelaxin and Flexeril cause dizziness.  (Tr. 127.)

     While ALJ Capshaw may have strengthened the bridge between his citation to the evidence and his conclusion, remanding for this reason would be an exercise in futility.  See Shramek v. Apfel, 226 F.3d 809, 814 (7th Cir. 2000).  The Plaintiff's prior statements regarding her use of drugs that cause her to be sleepy support the ALJ's conclusion that these medications are only taken at night.  While the Plaintiff may have indicated that all of these medications cause her to be sleepy, the ALJ reasonably could have relied on her prior statements which only identified Vicodin and Flexeril.  In addition, the ALJ could also have reasonably relied on her limited statements regarding the effect of a certain drug, Relafen, to discount the Plaintiff's later statement that all of her medications caused significant and disabling gastro-intestinal problems.  The Plaintiff's argument, in her brief, that each of the Plaintiff's medications can cause the side-effects that the Plaintiff complains of, does not provide for a reasonable basis to remand this matter.  The ALJ already had found the Plaintiff's testimony to be less than credible with respect to her pain – this finding, coupled with the Plaintiff's statements regarding when she takes her

10

medication and her daily activities, such as driving, support the ALJ's finding with respect to the effect of the Plaintiff's medication on her ability to work consistently.  The Plaintiff also has not pointed to any medical evidence in the record that would support the disabling nature of her adverse reactions to the medications.

## CONCLUSION

For the foregoing reasons, the final decision of the Commissioner of Social Security denying benefits is **AFFIRMED** and this matter is **DISMISSED WITH PREJUDICE.**


**DATED: September 21, 2005**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**
